UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-953-H

RICHARD C. EVANS, et al.                                                              PLAINTIFFS

V.

KENTUCKY HIGH SCHOOL                                                                  DEFENDANT
ATHLETIC ASSOCIATION

CIVIL ACTION NO. 3:09-CV-967-H

MARY ANN SEGER, et al.                                                                PLAINTIFFS

V.

KENTUCKY HIGH SCHOOL                                                                  DEFENDANT
ATHLETIC ASSOCIATION

**MEMORANDUM OPINION**

Plaintiffs have filed two separate civil actions challenging a bylaw promulgated by the Kentucky High School Athletic Association ("KHSAA" or "the association"), which oversees interscholastic athletics for Kentucky high schools. Each case has multiple Plaintiffs with overlapping claims. In essence, Plaintiffs contest KHSAA's rules covering athletic eligibility of non-public school students who accept certain financial aid. In both cases, and with respect to all Plaintiffs, KHSAA has moved to dismiss on a variety of grounds. Because all Plaintiffs' claims are interrelated, the Court will consider all of the motions collectively at this time.

From this lawsuit's inception, Plaintiffs have seemed either confused or ambivalent about asserting their federal constitutional claims. By dismissing those claims and remanding the remainder to state court, the Court may have accommodated, to some extent, the interests of all

parties.

**I.**

There are no material factual disputes in this case. Rather, Plaintiffs are challenging the facial application of certain KHSAA regulations.

KHSAA is a voluntary, unincorporated association consisting of over 280 public, private and parochial schools. The Kentucky Board of Education ("KBE") created and designated it to manage interscholastic athletics. The member schools promulgate certain rules, known as bylaws, by which each school promises to abide when participating in KHSAA sanctioned sporting events. After KHSAA approves a bylaw, the KBE reviews the bylaw and, if approved, incorporates in into the KBE's administrative regulations.

Particularly relevant to this case is KHSAA's adoption of Bylaw 13 concerning financial aid at non-public schools and the effect of that aid on athletic eligibility. KHSAA's stated purpose is to prevent "recruiting" of student athletes by non-public high schools. To do so, the association puts certain restraints on the eligibility of student athletes who accept financial aid to offset the costs of non-public school tuition. Through Bylaw 13, KHSAA creates two forms of acceptable financial aid: (1) need-based financial aid; and (2) merit-based financial aid. Need-based financial aid is awarded based on an independent analysis of the student's financial need for tuition assistance. So long as the amount of need-based aid is determined using published, objective criteria, a student may receive up to 100% of tuition and remain eligible to play KHSAA sanctioned sports. Merit-based aid is like an academic scholarship; it is financial aid that is based solely on academic and/or test performance. For students who accept merit aid to remain eligible to play KHSAA sports, that aid must be available to the entire student body

through a competitive application process and must be awarded based on published objective criteria. Further, merit aid must be limited to 5% of the student body. Most importantly, a student may only accept up to 25% of the cost of tuition in merit-based aid. In other words, if the student accepts more than 25% of the cost of tuition in merit-based aid, the student may not play in KHSAA sanctioned sporting events.

One other Bylaw 13 provision is relevant here. A student is ineligible to participate in KHSAA athletics if he or she accepts financial aid of any kind from a funding source that "is not under the custody and control of the member school or its governing board." This rule does not mean that only the member school itself may award financial aid. Rather, if an independent group wishes to award such aid and still allow recipients to remain eligible for KHSAA athletics, the group must subject its aid distribution to review and control by the member school or its governing board.[1] Of course, if the group does not want to subject itself to such control, it may certainly make that choice and any student who accepts that group's aid would simply be ineligible for KHSAA athletics.

Plaintiffs are the parents of four non-public school students who bring this action on behalf of their children. "E.C." is in the ninth grade at Walden School, a non-public, non-religiously affiliated elementary, middle and high school located in Jefferson County, KY. Walden is a member of KHSAA. She claims that she was awarded more than 25% of tuition in merit-based aid by Walden and, as a result of her acceptance of that aid, is ineligible to participate in high school athletics. "E.E.E." is a ninth grade student at Presentation Academy, a

---

[1] By way of an example, the "governing board" of private, Catholic schools is the archdiocese in which that school resides. The governing board of other non-public schools is determined by the institutional policies of the school itself.

Roman Catholic, all female high school in Jefferson County, KY. She claims that she has been forced to decline some merit-based scholarship offered by Presentation in order to remain eligible to play sports.[2] "C.S." is in the twelfth grade at Presentation. She was offered financial aid by the Angela M. Mason High School Scholarship Foundation ("Mason Foundation"), which has withdrawn from the oversight of Presentation's governing board. In order to maintain her athletic eligibility, C.S. declined to accept that aid. "Ce.S.," the sibling of C.S., is in the ninth grade at Presentation. Like her sister, Ce.S. was awarded a scholarship by the Mason Foundation. Unlike her sister, however, Ce.S. accepted the aid and is now ineligible to play in KHSAA sanctioned sports.

**II.**

E.E.E. filed the original case in Jefferson Circuit Court and amended the complaint several times. E.C. filed an identical, but separate complaint. All the students complain that Bylaw 13 is "unfair, discriminatory, arbitrary and capricious." For several months, it was unclear whether the complaint stated a claim under federal law. However, in response to a motion filed by KHSAA, Plaintiffs did assert rights under the United States Constitution. KHSAA immediately removed to this Court, Plaintiffs filed a motion to remand and the Court denied that motion. The only claim that appears to relate to federal law is Plaintiffs' claim that Bylaw 13 is discriminatory in violation of the United States Constitution. The Court will address that claim first.

---

[2] KHSAA raises some significant doubt about E.E.E.'s standing to bring a claim in this lawsuit as it has previously ruled her eligible to play sports because the aid she received does not exceed 25% of tuition. However, E.E.E. alleges that she has declined additional scholarship monies because of her desire to continue playing sports. Although KHSAA questions the accuracy of this allegation, this is a motion to dismiss, and the Court must accept all of Plaintiff's allegations as true.

The Court's first concern in analyzing whether a state law discriminates is the proper standard of review. As is well-settled, where a law or regulation discriminates based on a "suspect" classification, such as race, or discriminates with respect to a "fundamental" right, such as freedom of religion, the Court performs a strenuous analysis called "strict scrutiny." *See, e.g., Wygant v. Jackson Bd. Of Educ.*, 476 U.S. 267 (1986) (race); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (religion). Under such an analysis, the law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Hialeah*, 508 U.S. at 531-32. Alternatively, where a law discriminates based on a "quasi-suspect" classification, such as gender, the Court utilizes an intermediate form of scrutiny. *See Craig v. Boren*, 429 U.S. 190 (1976). Under this intermediate form of scrutiny, the law must "serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* at 197. Finally, where a law discriminates on some other basis, the law need only pass under the "rational basis" test, meaning that the law must be "rationally related to furthering a legitimate state interest." *See, e.g., Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (laws discriminating on the basis of age).

Here, Plaintiffs seem to assert that Bylaw 13 is discriminatory on the basis of religion.[3] Specifically, they claim that KHSAA has "called out Roman Catholic schools." While Bylaw 13 does, in the definitions section, mention Roman Catholic Schools to identify their "governing board" as the archdiocese in which the school resides, the bylaw does not discriminate on the basis of religion, either on its face or in its application. The Bylaw expressly applies to all

---

[3] Plaintiffs do not directly ask the Court to apply strict scrutiny to these claims. In fact, Plaintiffs primarily rely on the rational basis standard. However, Plaintiffs frequently reference their rights under the First Amendment and specifically claim the rule is discriminatory against Roman Catholics. Thus, in the interest of clarity and completeness, the Court will examine whether a viable religious discrimination claim exists.

member schools. While there is certainly no need for financial aid at public schools, the provisions limiting financial aid apply to *all* non-public schools, without regard to religious affiliation. In application, general applicability is demonstrated by one of Plaintiffs' own claims. E.C., a member of the Jewish faith, attends Walden School, a non-religiously affiliated school. Her claim is, in essence, identical to the claims of other Plaintiffs who attend a Roman Catholic school; Bylaw 13 has effected her in the same manner. Thus, there is no discrimination on the basis of religion.[4]

The Court recognizes that the Supreme Court has found certain "fundamental rights" with respect to parents' ability to control the upbringing and education of their children. For example, in *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925), the Court found an Oregon law requiring all children attend public schools unconstitutional. *Id.* at 534-35. Thus, if a law restricts the ability of parents to send their children to a non-public school, it must withstand strict scrutiny. Bylaw 13, however, does not impose any such limitation. Rather, the rule, in effect, relates only to participation in KHSAA sanctioned sporting events. A parent is not, in any manner, limited in her ability to send her child to a private school. Furthermore, the parent is not limited in accepting financial aid. Rather, the only limitation is on playing sports. If a student chooses to accept certain types of financial aid, as the student may rightfully do under Bylaw 13, then that student simply cannot participate in KHSAA sporting events. Thus, the "fundamental right" recognized in *Pierce* is not applicable here. Moreover, "[i]t is well-established that students do not have a general

---

[4] Furthermore, Plaintiffs do not allege that ineligibility to play interscholastic sports is, in any way, a burden on their religious practices.

constitutional right to participate in extracurricular athletics." *Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007). Thus, Bylaw 13 does not discriminate based upon any "fundamental right."

It is apparent, then, that Bylaw 13 is subject to review only under the "rational basis" standard. Thus, the rule need only be rationally related to furthering a legitimate state interest to be Constitutional. KHSAA asserts that Bylaw 13 furthers the legitimate state interest of "preventing recruitment of student-athletes for athletic purposes." The parties do not dispute the legitimacy of this interest. The only issue is whether Bylaw 13 is rationally related to that objective. The Court will consider the two relevant provisions of the bylaw in turn.

### III.

Rational basis review is "the most relaxed and tolerant form of judicial scrutiny. . ." *City of Dallas v. Stanglin*, 490 U.S. 19, 26 (1989). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (quotation omitted). The Supreme Court has cautioned that a law "must be upheld [under rational basis review] if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320 (quotation omitted). "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* at 320 (quotation omitted). Rather, "[a] statute is presumed constitutional and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320-21 (quotations omitted). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some

7

inequality." *Id.* at 321 (quotation omitted). To survive review, the law need only "find some footing in the realities of the subject addressed by the legislation." *Id.*

## A.

C.S. and Ce.S.'s claims attack the Bylaw 13 provision making ineligible any students who accept "financial aid from a funding source that is not under the custody and control of the member school or its governing board." Clearly, this provision would help prevent third-party funding sources from assisting schools to recruit student-athletes for athletic purposes. While the Mason Foundation appears to be a highly respectable group, that may not be so with every group. Even at the high school level, sports can be a big business. Athletic success of a high school brings media coverage and acclaim to the school. Non-public schools compete with other non-public and public schools for student enrollment and sports success can attract students. The KHSAA apparently concluded that some groups may either intentionally or inadvertently award financial aid on the basis of athletic ability in a way that favors particular schools. No one challenges this premise. Bylaw 13's provision prohibiting eligibility of students accepting aid from third-party sources not subject to oversight clearly and directly deters such conduct.

## B.

E.E.E. and E.C. challenge the Bylaw 13 provision that makes a student ineligible to participate in athletics if that student accepts more than 25% of her total tuition in merit-based aid. While this provision is more tangentially related to the goal of preventing recruitment of student athletes, Plaintiffs have failed to show that it is not rationally related to that goal.

Largely, Plaintiffs argue that they personally were not recruited for their athletic abilities and many students who qualify for merit-based aid under KHSAA guidelines will not be so

8

recruited. However, simply because a rule is "over-inclusive" (i.e. it affects individuals who do not pose the threat sought to be eliminated by the rule) does not make it unconstitutional under rational basis review. *See, e.g., New York City Transit Auth. v. Beazer*, 440 U.S. 568, 592-93 (1979) (finding that an overly-broad law, while probably "unwise," was not unconstitutional under rational-basis review). Likewise, simply because there are clear recruitment violations that can be detected using other methods does not mean that the government cannot enact broad laws to ensure no improper recruiting, no matter how well it may be guised as academic scholarship.

Plaintiffs also criticize KHSAA for not presenting any examples of students recruited for their athletic abilities that were prevented from participating in sports because of the merit-based aid rules. However, as discussed, it is Plaintiffs' burden to prove that the rule is not rationally related to the government's stated legitimate interest. KHSAA has no burden to present any evidence regarding the effectiveness of the rule.

Contrary to Plaintiffs' arguments, the Court finds that Bylaw 13 is rationally related to KHSAA's legitimate interest in preventing recruitment of student athletes for their athletic abilities. The Court can envision circumstances in which a student is granted more than 25% of her tuition in merit-based aid, at least in part, because of her athletic abilities. For example, a non-public school may desire to enroll an extremely talented basketball star who also happens to be very intelligent. That school may inform that student that if she takes a certain test and performs well, the school will award her a significant "merit-based" scholarship, when in reality the school would not make such an award that year had the student not been so athletically gifted. Thus, while the rule may apply to many students who are not recruited for their athletic

9

abilities, it may prevent the recruitment of some student athletes who are also mentally gifted. Accordingly, the bylaw passes rational basis review.[5]

**IV.**

Plaintiffs' remaining claims are all based on state law, over which the Court has only supplemental jurisdiction. *See* 28 U.S.C. § 1367. "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *Id.* For the reasons that follow, the Court finds that it is appropriate to decline supplemental jurisdiction in these circumstances.

The decision to decline or exercise supplemental jurisdiction rests squarely in the Court's discretion but the Sixth Circuit has offered guidance. "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Moreover, the Circuit "has held that generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* (quotation omitted).

KHSAA removed to this district only four months ago. This Court has addressed only the motions to remand and to dismiss with respect to the federal claims. Therefore, no duplication of judicial resources will result from remanding the state law claims to state court. Moreover, no party is prejudiced by the remand. The parties will incur no additional costs or

---

[5] Plaintiffs also make several arguments about this rule prejudicing lower socio-economic families stating that "those who are able to pay can play." First, the Court notes that laws which discriminate on the basis of economic status are subject only to rational basis review. *Dandridge v. Williams*, 397 U.S. 471 (1970). Second, Bylaw 13 clearly allows need-based aid up to 100% of tuition. Thus, if a family truly cannot afford private school tuition but wishes to send their child to such a school, they may receive financial aid and their child may still play sports.

10

attorney's fees. At worst, Plaintiffs' claims may be delayed to a small extent. However, Plaintiffs moved to remand and urged that position at a teleconference as recently as February 24, 2010. Thus, Plaintiffs position is clear; they would rather have the state law issues resolved in state court.

Furthermore, Plaintiffs' state law claims present questions of great importance to Kentucky citizens. Plaintiffs challenge Bylaw 13 under the Kentucky Constitution and Kentucky administrative law. The Court's analysis here and resolution of the federal constitutional issues may have little significance for the remaining claims. The Court is confident that Kentucky courts can interpret their state's constitution and decide the validity of their state's regulations. Thus, this Court will remand Plaintiffs' state law claims to Jefferson Circuit Court.[6]

The Court will enter an Order consistent with this Memorandum Opinion.

cc: Counsel of Record

---

[6] KHSAA articulates a number of other grounds for dismissal of all claims. Because the Court has determined that no viable federal claim exists and that the state claims should be remanded, the Court need not address these additional defenses.